UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL THOMAS HARVEY,

          Plaintiff,

    v.

NEVADA, et al.,

          Defendants.

No. 2:19-cv-01123-TLN-CKD PS

ORDER AND

FINDINGS & RECOMMENDATIONS

## I.    **Introduction**

This case proceeds on plaintiff's complaint filed on June 19, 2019. (ECF No. 1.) The following motions are before the court and came on regularly for hearing on December 4, 2019: (1) defendant Matthew Ence's ("Ence") motion to dismiss (ECF No. 6); (2) defendant Richard Cornell's ("Cornell") motion to dismiss (ECF No. 8); (3) defendants Douglas County, Bernadette Smith, and James Halsey's (collectively "Douglas County defendants") motion to dismiss (ECF No. 10) and motion to strike plaintiff's second opposition (ECF No. 59); (4) defendants City of South Lake Tahoe, Andrew Eissinger, Jake Herminghaus, and Shannon Laney's (collectively "South Lake Tahoe defendants") motion to dismiss (ECF No. 13); (5) defendant Lori London's ("London") motion to dismiss (ECF No. 14); (6) defendants State of Nevada, Terri Roeser

///

///

1

("Roeser"),[1] and Thomas Gregory's (collectively "Nevada defendants") motion to dismiss (ECF No. 18); and (7) defendant State of California's ("California") motion to dismiss (ECF No. 25). Plaintiff filed an opposition to each of the motions (See ECF Nos. 20, 30, 31, 44, 54–58, 61).

Katherine Parks, counsel for the Douglas County defendants; Frank Toddre, counsel for the Nevada defendants; Richard Cornell, appearing pro se; and Lori London, appearing pro se, all appeared telephonically at the December 4, 2019 hearing. Beverly Roxas, counsel for the City of South Lake Tahoe defendants, and plaintiff appeared in person at the hearing.

## II.    Allegations in the Operative Complaint

Plaintiff filed the operative complaint on June 19, 2019. (ECF No. 1.) The complaint alleges as follows. Plaintiff brings this case "after first bringing this case in earlier years," citing the following two cases in the Eastern District of California: 2:10-cv-1653-GEB-EFB and 2:12-cv-00526-KJM-EFB. Id. at 1. Plaintiff also references a habeas corpus complaint filed in the United States District Court, District of Nevada, case number 3:19-cv-00312. Id. at 24. Plaintiff claims that defendants injured plaintiff through participation in an unidentified unconstitutional policy. Id. at 2.

According to plaintiff, he refused to "plea bargain away his innocence and was incarcerated in Nevada." Id. at 3. "Subsequently, the plaintiff encountered the same unconstitutional policy used in California, and was again injured by the policy that is originally intended for coercing plea bargains." Id. Plaintiff claims he was subjected to this "unconstitutional policy" on three different occasions that he describes as: the Bargas incident, a dog bite incident, and the brick incident. Id. Plaintiff claims that in each of the three incidents he was "framed using false charges at the felony level." Id.

Plaintiff describes the Bargas incident as taking place sixteen years ago in 2004 in Nevada and involving a physical altercation between plaintiff and a third party, Cody Coons, whom plaintiff was accused of hitting. Id. at 4. Ben Bargas believed plaintiff hit Coons and apparently attacked plaintiff who then used a golf club to defend himself. Id. Plaintiff was charged and

---

[1] Per Roeser's motion, the court will use the correct spelling of her name. (ECF No. 40 at 1.)

2

convicted of battery and assault with a deadly weapon.  Id.  Gregory was plaintiff's defense counsel in connection with this incident.  Id. at 12.

The dog bite incident took place in 2010 in South Lake Tahoe where a dog owner left his dog outside a grocery store.  Id. at 5.  The dog bit plaintiff and the owner allegedly took the dog by its leash and fled.  Id.  Plaintiff pursued the dog owner on his bike and ultimately pushed his bike against the dog owner and took his skateboard until the police arrived.  Id.  Upon arrival, the police arrested plaintiff and charged him with felony assault with a deadly weapon and felony robbery.  Id.

Finally, the brick incident took place in 2011 when plaintiff complained to a hotel owner about no parking signs being placed on the street where he lives.  Id. at 5.  After the encounter, Gary Cornell[2] followed plaintiff home and picked up two bricks as he walked towards plaintiff.  Id.  Plaintiff picked up a hammer and later a pool cue and told Gary Cornell not to come any closer or he would kill him.  Id.  The South Lake Tahoe police officers charged plaintiff with assault with a deadly weapon and a crime with intent to terrorize.  Id.

Plaintiff can "prove who the policy makers were that abetted the criminal misconduct of the law enforcement officers."  Id. at 6.  Plaintiff alleges two judges were involved from the Ninth Judicial District Court of Nevada and the Superior Court of California, County of El Dorado. According to plaintiff, "[t]his unconstitutional policy was detected by both analyzing the conduct of the Courts, and also analyzing the conduct of the law enforcement officers."  Id. at 7.

Plaintiff then proceeds to explain the unconstitutional policies as they were applied in each incident.  See id. at 7 (alleging "there was no expectation that the case would go to trial" in the Bargas incident, which apparently affected the investigation); at 8 (alleging no photographs were taken of plaintiff's bite wound following the dog bite incident, and plaintiff's bike was abandoned, which suggests the police were just "preparing the case to be plea bargained"); and at 9 (alleging that following the brick incident, police did not photograph two bricks that were out of place and there was "no preparation to bring this case to trial").

---

[2] There appears to be no relation to named defendant Richard Cornell.

Plaintiff alleges that judges implemented the same unidentified unconstitutional policy in their courtrooms, and that he had not done anything unlawful. Id. at 10. Gregory was "the most egregious" participant having been an attorney who "quit on" plaintiff "shortly before trial." Id. Plaintiff alleges judges, who are not named as defendants, committed the crimes of kidnapping and conspiracy under Nevada and California statutes. Id. at 11. Further, London, an attorney, "attempted to extort money from" plaintiff. Id.

Plaintiff did not "recognize[]" the "matching practices" of Judge David Gamble and Judge Susanne Kingsbury until after 2018 when he learned his former defense counsel, Gregory, had been appointed as a judge of the Ninth Judicial Court of Nevada. Id. at 12. Because of his epilepsy, plaintiff did not testify at trial. Id. at 13. Judge David Gamble perpetrated a conspiracy using false excessive charges against innocent citizens, including plaintiff. Id. at 13. Plaintiff seeks $5 million in monetary damages and $50 million in exemplary damages against the State of Nevada for its "complicity in these unconstitutional practices." Id. Plaintiff summarizes his allegations against each defendant or defendants combined, and the damages he seeks.

Douglas County, Nevada committed the crime of kidnapping against plaintiff and plaintiff seeks $5 million in monetary damages and $50 million in exemplary damages as a result. Id. at 14.

Defendants Smith and Halsey participated in an unconstitutional policy that was designed to coerce plea bargains in connection with the Bargas incident. Id. at 15. Plaintiff seeks $1 million in damages from each defendant. Id.

Defendant Gregory accepted a quid pro quo deal from Judge Gamble that involved Gregory quitting on plaintiff who then had to represent himself during his criminal trial. Id. at 16. Plaintiff later discovered the quid pro quo deal when he found out that Gregory was appointed to the Ninth Judicial District of Nevada. Id. Plaintiff seeks $5 million and $50 million in compensatory and exemplary damages, respectively. Id.

Defendants Roeser, Cornell, Ence, Armstrong, and Walsh are all attorneys "in alliance with Judge David Gamble." Id. at 17. They were all apparently asked to keep the conspiracy a secret and, according to plaintiff, had varying levels of culpability. Id. Plaintiff seeks various

damages against each of the defendants ranging from $1,000 to $5 million for his injuries.  Id.

For the State of California, plaintiff contends that he was kidnapped and seeks $200,000 in monetary damages, $15,500 for his bail costs, and $200 million in exemplary damages.  Id. at 18.

Plaintiff claims the City of South Lake Tahoe "fails to address serious corruption in [its] police force."  Id. at 19.  Plaintiff seeks $15,500 for his bail costs and $2 million in exemplary damages.  Id.

Defendant Eissinger was the officer dispatched to address the dog bite incident.  Id. at 20.  After learning about the incident, "Eissinger decided that [plaintiff] could easily be framed by ignoring the circumstances regarding the dog bite."  Id.  Plaintiff seeks $8,500 in monetary damages and $5 million in exemplary damages.  Id. at 21.

Defendant Duke was also dispatched with Eissinger to the dog bite incident location.  Id. at 21.  Duke was persuaded by Eissinger to frame plaintiff.  Id.  Plaintiff seeks $8,500 in monetary damages and $5 million in exemplary damages.  Id.

Defendant Herminghaus arrived at the scene of the brick incident.  Id. at 22.  Plaintiff recounts the allegations of the incident and concludes that "[t]he false charges alleged against [plaintiff] were at the felony level, Making a Terrorist Threat, and Assault with a Deadly Weapon."  Id.

Finally, defendant Laney was dispatched to the brick incident as well.  Id. at 23.  Laney observed two bricks displaced besides plaintiff's driveway but "knowingly allowed Jake Herminghaus to arrest and frame" plaintiff.  Id.  Plaintiff seeks $7,500 for his bail costs and $1 million in exemplary damages from Herminghaus and Laney.  Id.

## III.  Analysis

### A.  Matthew Ence's and Lori London's Motions to Dismiss Should be Granted

During the December 4, 2019 hearing, plaintiff agreed on the record that Ence's and London's motions to dismiss should be granted and these two parties should be dismissed from this case.  The court will therefore recommend granting these two motions and dismissing Ence and London.  See Fed. R. Civ. P. 41(a)(2) (stating that "an action may be dismissed at the

1     plaintiff's request only by court order, on terms that the court considers proper").

2     **B.**    **Richard Cornell, Douglas County, Bernadette Smith, James Halsey, Terri Roeser, and Thomas Gregory's Motions to Dismiss Should Be Granted for Lack of Personal Jurisdiction**

3

4     As noted above, Cornell is an attorney and was plaintiff's defense counsel in connection

5 with the Bargas incident. (ECF No. 1 at 2.) Plaintiff alleges that Cornell, Roeser, and other

6 defendants are all attorneys "in alliance with Judge David Gamble" in Nevada. (Id. at 17.) They

7 were all apparently asked to keep the alleged conspiracy a secret and, according to plaintiff, had

8 varying levels of culpability. (Id.) Plaintiff further alleges Douglas County kidnapped him, and

9 Nevada law enforcement officers Smith and Halsey participated in an unconstitutional policy to

10 coerce a plea bargain from plaintiff in connection with the Bargas incident. (Id. at 14–15.)

11 Plaintiff also alleges that Gregory accepted a quid pro quo deal from Judge Gamble that involved

12 him quitting on plaintiff. (Id. at 16.)

13     Cornell, Douglas County, Smith, Halsey, Roeser, and Gregory all bring a motion to

14 dismiss for lack of personal jurisdiction. (ECF Nos. 8, 10, 18, 40.) Because the court finds it

15 does not have personal jurisdiction over these defendants, it does not reach their alternative

16 arguments. See, e.g., Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979) (explaining that

17 "[t]he question of personal jurisdiction, which goes to the court's power to exercise control over

18 the parties, is typically decided in advance of venue").

19     **1.**     **Legal Standard for a Motion to Dismiss Under Rule 12(b)(2)**

20     A party may challenge the court's personal jurisdiction over it by bringing a motion under

21 Federal Rule of Civil Procedure 12(b)(2). A Rule 12(b)(2) motion "must be made before

22 pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b)(2).

23     Where no applicable federal statute governs personal jurisdiction, "the law of the state in

24 which the district court sits applies." Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements

25 Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003). California's long arm statute, which applies in this

26 case, allows courts to exercise personal jurisdiction to the extent permitted by the Due Process

27 Clause of the United States Constitution and thus the defendant must have certain "minimum

28 contacts" with the forum state, "such that the maintenance of the suit does not offend traditional

notions of fair play and substantial justice." <u>Ranza v. Nike, Inc.</u>, 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted)).

There are two types of personal jurisdiction: (1) general jurisdiction, and (2) specific jurisdiction. A federal district court may exercise either general or specific personal jurisdiction over a defendant. <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 127–33 (2014).

General jurisdiction requires the defendant have affiliations with California that are sufficiently "continuous and systematic" and that California essentially operates as the defendant's home. <u>See</u> <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011).

Specific jurisdiction requires, *inter alia*, that the defendant committed an intentional act, expressly aimed at the forum state causing harm that the defendant knows is likely to be suffered in the forum state. <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 803 (9th Cir. 2004). The Ninth Circuit has established a three-prong test for whether a court can exercise specific personal jurisdiction: (1) the defendant must have "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California," thereby "invoking the benefits and protections of its laws;" (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable, i.e., it must comport with fair play and substantial justice. <u>Id.</u> at 802. The plaintiff bears the burden on the first two prongs, and "personal jurisdiction is not established in the forum state" if he fails to satisfy either prong. <u>Id.</u> "If the plaintiff succeeds in establishing both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." <u>Id.</u> (internal quotations and citation omitted).

## 2. The Parties' Arguments

Regarding personal jurisdiction, Cornell argues that he is a permanent resident of the State of Nevada and has been "so permanently domiciled since September of 1978." (ECF No. 8 at 12.) Cornell further argues that his representation of plaintiff occurred entirely in the State of

7

Nevada. (Id. at 12–14.) As a result, the complaint lacks any facts supporting that Cornell directed activities or consummated some transaction within California to create jurisdiction. (Id. at 6.) Plaintiff does not address Cornell's personal jurisdiction argument in his opposition, nor did he submit affidavits concerning Cornell's contacts with California. (See ECF Nos. 20, 54.) Instead, plaintiff argues that he was "in custody of the *State of Nevada*" and brought an appeal, which court documents will support that "Cornell had deliberately produced a Petition For Writ Of Habeas Corpus that was designed to lose while the plaintiff was incarcerat[ed] in a *Nevada* prison." (ECF No. 20 at 2 (emphasis added); see also id. at 5 (arguing that Cornell failed to establish an "intent to appeal claim" in the Ninth Judicial District Court of Nevada).) Plaintiff's opposition focuses on Cornell's handling of plaintiff's habeas corpus petition stemming from the Bargas incident, which took place in Nevada. (See generally id. at 1–9.) Similarly, during the hearing on Cornell's motion to dismiss, plaintiff again focused his argument on his position that Cornell lost plaintiff's habeas corpus petition purposefully.

Douglas County, Smith, and Halsey also argue this court has no jurisdiction over them as it relates to plaintiffs' claims. Douglas County is in Nevada, which is where the Bargas incident took place and where plaintiff was charged with violations of Nevada law. Nevada is also where the officers responding to the scene, Smith and Halsey, live. (ECF No. 10 at 4.) In opposition, plaintiff argues that Douglas County "has implemented an unconstitutional policy to coerce plea bargaining from citizens whom are accused in Douglas County, Nevada." (ECF No. 44 at 1.) Plaintiff apparently did not discover the unidentified unconstitutional policy until Gregory became a judge in Nevada. (Id. at 2.) As for Smith and Halsey, plaintiff argues that they investigated the Bargas incident (which took place in Nevada), and took the side of the other individuals involved. (Id. at 3–5.) Plaintiff does not address the Douglas County defendants' jurisdiction argument.

Gregory argues that plaintiff "has adduced no evidence that Defendants have any physical presence in California, much less 'substantial, systematic, and continuous' contacts with the State." (ECF No. 18 at 7.) He further argues that plaintiff "has not identified any conduct of the character which would provide [Gregory] with fair warning [he] would be subject to jurisdiction

8

in California." (Id. at 8.)  In opposition, plaintiff argues that "[t]his defendant acted against the plaintiff secretly in alliance with a judge and with the State of Nevada while he was representing this plaintiff." (ECF No. 61 at 1.)  Plaintiff acknowledges that Gregory's representation took place in Nevada. (Id. at 2.)  Plaintiff does not address Gregory's jurisdiction arguments.

Finally, Roeser argues that the court lacks jurisdiction over her, pointing out that plaintiff "has adduced no evidence that Roeser [had] any physical presence in California, much less 'substantial, systematic, and continuous' contacts with the State." (ECF No. 40 at 12.)  Further, Roeser argues that plaintiff "provided no evidence demonstrating that Roeser engaged in conduct expressly aimed at California or [plaintiff's] actions in California as his criminal conduct and trial occurred in Douglas County, Nevada." (Id. at 13.)  Roeser also argues that there have been no forum-related activities she engaged in that tie her to California. (Id. at 14.)  Plaintiff did not oppose Roeser's arguments.

### 3.    Analysis

From what the court can glean from plaintiff's oppositions regarding jurisdiction, he appears to argue that "plaintiff has alleged that the unconstitutional policy has injured him in both states," California and Nevada, and "this jurisdiction is [therefore] certainly applicable to defendants in California." (ECF No. 20 at 9.)  Plaintiff continues, arguing that "[t]hese defendants in the State of Nevada have been enjoying the benefits of figuratively every 'home field' advantage that any jurisdiction can offer." (Id.)  However, aside from conclusions, there is nothing supporting that these Nevada defendants committed any act aimed at this California forum state.

At most, plaintiff's oppositions only support that the actions related to his allegations against these defendants all took place in Nevada. (See, e.g., ECF No. 20 at 11 ("This plaintiff still has nearly everything that resulted from being framed in the State of Nevada.").)  As a result, plaintiff fails to establish that these defendants committed an intentional act, expressly aimed at the forum state causing harm that he knows is likely to be suffered in the forum state. See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty., 137 S. Ct. 1773, 1781 (2017) (explaining that when there is no connection between the forum and the underlying controversy,

"specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State").

Even accepting plaintiff's allegations as true, plaintiff has not made a prima facie showing that any of these defendants purposefully directed any activities toward California. The complaint and plaintiff's oppositions make clear that the activities that give rise to plaintiff's claims against these defendants occurred exclusively in Nevada. Accordingly, plaintiff's complaint against these defendants must be dismissed. Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008) (explaining that "if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed." (citing Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006))).

For these reasons, the undersigned recommends granting Richard Cornell, Douglas County, Bernadette Smith, James Halsey, Terri Roeser, and Thomas Gregory's motions to dismiss.

## C. Andrew Eissinger, Jake Herminghaus, and Shannon Laney's Motion to Dismiss Should Be Granted Based on the Statute of Limitations for Section 1983 Claims

The South Lake Tahoe defendants bring a motion to dismiss based on, *inter alia*, the statute of limitations applicable to § 1983 claims; and failure to properly plead a Monell claim against South Lake Tahoe. ECF No. 13 at 2. The latter argument is addressed Section V below.

In opposition, plaintiff argues that he was framed two times by South Lake Tahoe. (ECF No. 56 at 1–2.) Regarding the dog bite incident, plaintiff argues that Eissinger and Duke opted to charge plaintiff with false felony charges. (Id. at 2.) Similarly, plaintiff argues that Eissinger, Herminghaus, and Laney appeared at the scene of the brick incident on August 28, 2011 and plaintiff was ultimately "arrested and falsely charged with committing two felonies." (Id. at 4–5.) Plaintiff concludes that "[t]his case proves that the [South Lake Tahoe Police Department] uses false felony charges to coerce plea bargaining, something the local court desires." (Id. at 5.)

///

///

///

### 1. Legal Standard

"[C]laims brought under § 1983 are subject to the forum state's statute of limitations for personal injury suits. Flynt v. Shimazu, 940 F.3d 457, 461 (9th Cir. 2019) (citing Wilson v. Garcia, 471 U.S. 261, 275–77 (1985)). In California, the applicable statute of limitations for civil rights actions brought under 42 U.S.C. § 1983 is two years. Id. at 461 (citing Cal. Code Civ. P. § 335.1; Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1027 (9th Cir. 2007)); see also Maldonado v. Harris, 370 F.3d 945, 954–55 (9th Cir. 2004).

The statute of limitations runs separately for "each discrete act" challenged. RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1061 (9th Cir. 2002) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)). "'It is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action,' that is, when the plaintiff 'knows or has reason to know of the actual injury.'" Flynt, 940 F.3d at 462 (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007); Scheer v. Kelly, 817 F.3d 1183, 1188 (9th Cir. 2016)). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp., 536 U.S. at 113.

### 2. Analysis

According to plaintiff's complaint, Eissinger was dispatched to the dog bite incident on March 19, 2010 and decided at that time to frame plaintiff. (ECF No. 1 at 20.) Herminghaus and Laney were both dispatched to the brick incident on August 28, 2011 and also decided to frame plaintiff. ECF No. 1 at 22. These are discrete acts on the part of each of these three South Lake Tahoe police officers that took place in South Lake Tahoe.

Plaintiff vaguely alleges that he did not discover some "quid pro quo" deal between Gregory and Judge David Gamble until June 2018. However, there is nothing in the complaint or plaintiff's opposition to Eissinger, Herminghaus, and Laney's motions that establishes a connection or link between these three defendants and a separate deal, or policy that stemmed from a deal, between an attorney and a judge. Moreover, the continuing violations doctrine—if plaintiff is attempting to rely on it to avoid dismissal due to lack of subject matter jurisdiction—does not apply when the plaintiff challenges a "discrete act." Tarabochia v. Adkins, 766 F.3d

1115, 1129 n.13 (9th Cir. 2014); <u>Nat'l R.R. Passenger Corp.</u>, 536 U.S. at 122 (concluding that the continuing violations doctrine does not apply to claims of "discrete discriminatory or retaliatory acts"). What plaintiff claims is some ongoing policy to coerce plea bargains is conclusory at best and there is nothing that establishes a series of related wrongful acts. <u>See, e.g.</u>, <u>DeGrassi v. City of Glendora</u>, 207 F.3d 636, 645 (9th Cir. 2000) (explaining that a plaintiff must state facts supporting a determination that the alleged wrongful actions are related closely enough to constitute a continuing violation and that one or more of these wrongful acts falls within the limitation period).

Plaintiff's claims against Eissinger, Herminghaus, and Laney are grounded in his allegations that they responded to two separate crime scenes and framed plaintiff in 2010 and 2011. Plaintiff does not allege that these two events were part of any ongoing constitutional violations by Eissinger, Herminghaus, and/or Laney. <u>See</u> <u>Cherosky v. Henderson</u>, 330 F.3d 1243, 1247–48 (9th Cir. 2003) (explaining that even if acts occur as part of an alleged ongoing policy, if the "heart of plaintiffs' complaint does not stem from the policy . . . but rather from the individualized decisions that resulted from implementation of the policy, . . . [t]hese individualized decisions are best characterized as discrete acts, rather than as a pattern or practice of discrimination"). These two alleged framing events took place nearly eight years before plaintiff filed his complaint. Because plaintiff has alleged only individualized claims against these defendants, the normal discovery rule of accrual applies. Plaintiff had knowledge of the injury or injuries giving rise to his claims by March 2010 and August 2011. Accordingly, his suit, filed in June 2019, is outside the two-year statute of limitations.

For these reasons, plaintiff's complaint against Eissinger, Herminghaus, and Laney should be dismissed because the claims are beyond the statute of limitations.

### D.     California's and Nevada's Motions to Dismiss Should Be Granted Based on Eleventh Amendment Immunity

California brings a motion to dismiss based on the Eleventh Amendment immunity. (ECF No. 25-1.) Similarly, Nevada argues that it is immune from suit under the doctrine of interstate sovereign immunity and the Eleventh Amendment. (ECF No. 18 at 10–13.)

1    Regarding California, in opposition, plaintiff recounts his vague allegations and argues

2    that California "substituted police officer's Jake Herminghaus' testimony for Garry Corniel who

3    had fled" and "has an unconstitutional law that allows this kind of hearsay testimony in

4    preliminary hearings." ECF No. 57 at 2. Plaintiff opposes the motion to dismiss but does not

5    address California's immunity argument. As for Nevada, plaintiff's opposition does not directly

6    address the state's Eleventh Amendment immunity argument. (ECF No. 61.)

7    "The Eleventh Amendment prohibits federal courts from hearing suits brought against an

8    unconsenting state." Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th

9    Cir. 1991) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) (holding

10   the Eleventh Amendment prohibits federal jurisdiction over suits against states unless the state

11   unequivocally consents to the suit)). This jurisdictional limitation applies regardless of whether

12   plaintiff seeks damages or injunctive relief. Pennhurst State Sch., 465 U.S. at 102 (citing Cory v.

13   White, 457 U.S. 85, 91 (1982)).

14   Here, plaintiff attempts to sue the States of California and Nevada in federal court.

15   However, the states are entitled to sovereign immunity under the Eleventh Amendment and

16   plaintiff fails to show any waiver of such sovereign immunity. See Dittman v. California, 191

17   F.3d 1020, 1025–26 (9th Cir. 1999) (noting that the "State of California has not waived its

18   Eleventh Amendment immunity . . . in federal court"); O'Connor v. Nevada, 686 F.2d 749, 750

19   (9th Cir. 1982) (recognizing that the State of Nevada has explicitly refused to waive its immunity

20   to suit under the Eleventh Amendment). Accordingly, the Eleventh Amendment bars plaintiff

21   from bringing any claims against the State of California or the State of Nevada, the complaint

22   fails to state a valid claim for relief against the states, and dismissal is proper. Because these

23   defendants are immune from liability and the complaint does not identify a waiver of sovereign

24   immunity, the undersigned finds that amendment would be futile.

25   For these reasons, the complaint against California and Nevada should be dismissed.

26   **IV.    Plaintiff Should Not Be Granted Leave to Amend**

27   A court granting a motion to dismiss a complaint must decide whether to grant leave to

28   amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or

dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Eminence Capital, 316 F.3d at 1052 (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Grp., Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) (explaining that "[l]eave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility")).

The undersigned has carefully considered whether plaintiff may amend his complaint to state any claim upon which relief can be granted against the defendants discussed above. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." Cal. Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988); see also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1292–93 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments); Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 893 (9th Cir. 2010) (explaining that dismissal without leave to amend is appropriate if the complaint would not be saved by any amendment).

Leave to amend would clearly be futile in this case given the nature of the deficiencies noted above, including lack of personal jurisdiction, statute of limitations, and sovereign immunity.

## V. City of South Lake Tahoe's Motion to Dismiss Should Be Granted Based on Plaintiff's Failure to Properly Plead a Monell Claim

Finally, the City of South Lake Tahoe seeks dismissal of plaintiff's complaint for failure to state a claim upon which relief can be granted. For the reasons discussed below, the

undersigned finds that plaintiff fails to state a <u>Monell</u> claim against the City; and plaintiff's complaint against it should be dismissed without leave to amend because he has been unable to cure these deficiencies despite repeated opportunities to do so.

The City of South Lake Tahoe argues that the complaint against it should be dismissed for failure to properly plead a <u>Monell</u> claim. (ECF No. 13 at 2.) In his complaint, plaintiff alleges as follows regarding the city:

> This defendant fails to address serious corruption in [its] police force, SLTPD. This matter has previously been brought to the attention of this municipality, and there has been no effort to correct the serious problems within the SLTPD.
>
> This municipality is apparently in disbelief of the seriousness of the situation, or has pure indifference towards the rights of the citizens that live in the City of South Lake Tahoe. This plaintiff has received no notification that any deficiencies have been addressed during the following 6 years. These police officers are deliberately acting against law abiding citizens within this community. Police officers are routinely hired from out of state, and this contributes to the problems within this police force. There is not adequate supervision of these police officers, and no effective training.

ECF No. 1 at 19.

In his opposition to the city's motion, plaintiff argues that the City of South Lake Tahoe police officers "have grown accustomed to using false felony charges to set up plea bargaining in the local court." ECF No. 56 at 1. The city, plaintiff continues, "does not know what [the police department] is doing because of indifference and neglect." <u>Id.</u> Plaintiff then recounts the three underlying incidents wherein he was arrested and claims he was framed. <u>Id.</u> at 2–6.

### 1.      Legal Standard

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint. <u>Vega v. JPMorgan Chase Bank, N.A.</u>, 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of his claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); <u>see also</u> <u>Paulsen v. CNF Inc.</u>, 559 F.3d 1061, 1071 (9th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

In considering a motion to dismiss for failure to state a claim, the court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. <u>Corrie v. Caterpillar, Inc.</u>, 503 F.3d 974, 977 (9th Cir. 2007). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." <u>Paulsen</u>, 559 F.3d at 1071; <u>see also</u> <u>W. Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981). The court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. <u>See</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc); <u>accord</u> <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are involved"); <u>see also</u> <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when evaluating them under the standard announced in <u>Iqbal</u>).

The court may consider facts established by exhibits attached to the complaint. <u>Durning v. First Bos. Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts that may be judicially noticed, <u>Mullis v. U.S. Bankr. Ct. for Dist. of Nev.</u>, 828 F.2d 1385, 1388 (9th Cir. 1987), and matters of public record, including pleadings, orders, and other papers filed with the court, <u>Mack v. S. Bay Beer Distribs.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986).

### 2. Analysis of Plaintiff's <u>Monell</u> Claim

Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be liable for causing a constitutional deprivation. <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658, 690 (1978). A municipality, however, "cannot be held liable *solely* because it

16

employs a tortfeasor—or, in other words, a municipality cannot be held liable under [42 U.S.C. § 1983] under a *respondeat superior* theory." Monell, 436 U.S. at 691. To state a claim for municipal liability under Section 1983, a plaintiff must allege facts showing "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" Oviatt By & Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989)).

Here, plaintiff sets forth no more than conclusory allegations in support of his claim that the City of South Lake Tahoe had an unconstitutional custom, policy, or practice. To the extent plaintiff relies upon a respondeat superior theory of liability based upon the three South Lake Tahoe officers' alleged misconduct, a city may only be held liable for an official's conduct under Section 1983 when the official is "responsible for establishing final government policy respecting [the] activity [at issue]." Pembaur v. City of Cincinnati, 475 U.S. 469, 482–83 (1986). There is no indication that the officers had final policymaking authority for the City of South Lake Tahoe. Without such authority, the officers' alleged misconduct cannot give rise to a claim of municipal liability. Id. at 483. Nor has plaintiff shown in his opposition or any other papers that he can allege facts to cure this deficiency. Thus, plaintiff's complaint against the City of South Lake Tahoe should be dismissed.

The undersigned has carefully considered whether leave to amend should be granted with regard to plaintiff's claims against the City of South Lake Tahoe. A brief discussion of plaintiff's prior efforts to allege a Monell claim against the City is necessary. In Harvey v. City of South Lake Tahoe, et al., Case No. 2:10-cv-01653-KJM-EFB, plaintiff alleged a Monell claim against the City in six separate complaints after being given the opportunity to amend five times. In a related case, Harvey v. City of South Lake Tahoe, et al., Case No. 2:12-cv-00526-KJM-EFB, plaintiff alleged a Monell claim against the City and was again unable to cure the deficiencies articulated by the court in its orders dismissing plaintiff's complaint with leave to amend.

In particular, on February 21, 2013, the court entered findings and recommendations that

were later adopted and which informed plaintiff, as the court already had on several occasions, of the allegations that plaintiff must make to plead a <u>Monell</u> claim. (<u>Harvey v. City of South Lake Tahoe, et al.</u>, Case No. 2:12-cv-00526-KJM-EFB, ECF 32 at 11; <u>see also</u> <u>Harvey v. City of South Lake Tahoe, et al.</u>, Case No. 2:10-cv-01653-KJM-EFB, ECF 89 at 15 (noting the court has informed plaintiff on several occasions of the elements of a <u>Monell</u> claim and "[p]laintiff again has failed to heed this court's instructions").) There, the court recognized that plaintiff had been given numerous opportunities to cure the deficiencies in his <u>Monell</u> claim, yet "plaintiff continues to struggle to do so." (<u>Id.</u>) As with those complaints, plaintiff's instant complaint, "does not allege a formal policy or official custom. Nor does the complaint allege that a policymaker acted against the plaintiff." (<u>Id.</u>) The facts plaintiff attempted to allege in the past are similar and in some cases identical to the facts he is attempting to allege here, including that he was framed: "the facts alleged are that six different South Lake Tahoe police officers were involved in framing plaintiff and no officer opposed the conduct, even though they knew or should have known that plaintiff had not committed a crime." (<u>Id.</u> at 12.)

As with this court's prior findings, the undersigned also finds that the specific facts plaintiff "describes hardly demonstrate a widespread practice of the City's police department of using lies to frame accused defendants. Rather he articulates facts showing two encounters with law enforcement, both of which occurred when officers responded to altercations in which plaintiff was involved. By plaintiff's own description, the officers listened to the witnesses and relied on the statements of the other witnesses rather than accepting plaintiff's account of what happened. An officer relying on and reporting the statements of witnesses to the event does not demonstrate a policy, custom or widespread practice of framing defendants or using lies to extract excessive bail," or, in this case, coercing plea bargains. (<u>Id.</u> at 13.) Plaintiff's conclusory characterizations of the events in that manner simply do not meet the pleading requirement of <u>Iqbal</u>. (<u>Accord</u>, <u>id.</u>) Although this is plaintiff's original complaint in this case, this is hardly the first time plaintiff has attempted to plead a <u>Monell</u> claim against the City of South Lake Tahoe for a policy of framing him.

As with all of his prior complaints against the City, plaintiff alleges only ultimate

conclusions and there are no specific acts that show any such policies actually existed. The court is cognizant of the fact that pro se plaintiffs must be afforded an opportunity to cure pleading deficiencies by amendment. However, plaintiff has repeatedly been instructed on how to plead a Monell claim; and yet continues to fail to articulate a claim or cure the deficiencies this court has pointed out on numerous occasions.

As a result, the court finds that plaintiff should not be granted leave to amend. Here, it would clearly be futile given plaintiff's history of failed attempts to bring a Monell claim against the City of South Lake Tahoe despite the court having gone out of its way to give plaintiff the necessary guidance to allege such a claim. Karim-Panahi v. L.A. Police Dept., 839 F.2d 621, 623 (9th Cir. 1988) (noting that leave to amend must be given unless it is "absolutely clear" that the deficiencies could not be cured by amendment (citations and quotations omitted)). Having afforded plaintiff so much guidance and so many opportunities in the past, the court will not continue to utilize scant judicial resources on what is clearly a futile claim. District courts have inherent powers to "fashion an appropriate sanction for conduct which abuses the judicial process," and in certain cases, dismissal of a lawsuit is an appropriate sanction. Chambers v. NASCO, Inc., 501 U.S. 32, 44–45 (1991). Here, the court finds that plaintiff has been afforded more than a sufficient number of opportunities to state a Monell claim against the City of South Lake Tahoe and has failed to do so. Thus, dismissal of his claim without leave to amend is proper.

Moreover, at this juncture, there is an obvious risk of prejudice to the defendant, who has been forced to litigate the same meritless claims against it since 2010. Ferdik v. Bonzelet, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (explaining that "[i]t is incumbent upon us to preserve the district courts' power to manage their dockets without being subject to the endless vexatious noncompliance of litigants"); see also Ismail v. Cty. of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012) (explaining that "a district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint'" (citations omitted)).

For these reasons, the complaint against the City of South Lake Tahoe should be

dismissed without leave to amend.

**VI.**    **Conclusion**

For these reasons, IT IS HEREBY RECOMMENDED that:

1.    Defendant Matthew Ence's motion to dismiss (ECF No. 6) be granted per plaintiff's request at the December 4, 2019 hearing.

2.    Defendant Lori London's motion to dismiss (ECF No. 14) be granted per plaintiff's request at the December 4, 2019 hearing.

3.    Defendant Richard Cornell's motion to dismiss (ECF No. 8) be granted without leave to amend.

4.    Defendants Douglas County, Nevada, Bernadette Smith, and James Halsey's motion to dismiss (ECF No. 10) be granted without leave to amend.

5.    Defendants City of South Lake Tahoe, Andrew Eissinger, Jake Herminghaus, and Shannon Laney's motion to dismiss (ECF No. 13) be granted without leave to amend.

6.    Defendants Thomas Gregory and Terri Roeser's motion to dismiss (ECF Nos. 18, 40) be granted without leave to amend.

7.    Defendant State of California's motion to dismiss (ECF No. 25) be granted without leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, plaintiffs may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiffs are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

In light of these recommendations, IT IS ALSO HEREBY ORDERED that all pleading, discovery, and motion practice in this action are stayed pending resolution of the findings and recommendations.  With the exception of objections to the findings and recommendations and any non-frivolous motions for emergency relief, the court will not entertain or respond to any

motions and other filings until the findings and recommendations are resolved.

IT IS FURTHER ORDERED that Douglas County Defendants' Motion to Strike Plaintiff's Opposition (ECF No. 59) is denied as moot.

Dated: February 13, 2020

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

15 harvey1123.mtd.f&r